# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ALEK A. HANSEN, as Administrator of the Estate of
Debra Arbuckle,

                Plaintiff,

vs.                                                Case No. 2:20-cv-02480-JWB-GEB

KALEB DAILEY,

                Defendant.

---

## Reply in Support of Motion for Summary Judgment

Defendant submits this reply in support of his motion judgment as a matter of law.

### Statement of Facts

This reply addresses only the Defendant's Statements of Fact (DSOF) the response purports to controvert.

21. Plaintiff purports to controvert DSOF ¶ 21, citing to Exhibit M, Deputy Marrero's Body Cam 2). The Volkswagen ran several red lights and stop signs, failed to maintain a lane, crossed the center line several times, and drove at speeds over 100 mph. Thus, the driver of the Volkswagen had, under K.S.A. 8-1506(b) and (c)(2), committed felony fleeing and eluding. *Adams Fleet/Dash Camera, 00:00:01 to 00:09:05; Dailey AXON, 00:06:16 to 00:07:52; Marrero AXON, 00:08:50 to 00:16:45*.

29. Plaintiff purports to controvert DSOF ¶ 29 (that Arbuckle continued driving on a rim, that Dailey attempted a TVI, but Arbuckle drove out of it). Nothing on Dailey's body cam refutes or disputes the stated fact.

31. Plaintiff purports to controvert DSOF ¶ 31, that Dailey there was only one occupant when seeing through the windshield. Plaintiff cites Dailey's deposition in which he stated he could not see into the compartment on the sides and stated that, he could see "through the relatively clear

glass of the front wind screen" when the vehicle wrapped around the front of his patrol vehicle during the TVI. *Dailey depo.*, 68:2-68:18. This testimony is not inconsistent with Dailey's testimony and statements that he could not see through the dark tinted windows but had only seen one person in the vehicle, the driver. *DSOF ¶ 39*.

34. Plaintiff purports to controvert DSOF ¶ 34, regarding Dailey's conclusion that Arbuckle appeared willing to continue to evade and that Dailey did not want the pursuit to continue into a neighborhood. None of the cited Body Cam video disputes the stated fact.

36. Plaintiff purports to controvert DSOF ¶ 36, regarding the location where the Volkswagen initially came to a stop. Nothing in the cited testimony refutes the stated fact.

45-50, 52-58, 60-61, 63, and 65-66. Plaintiff purports to controvert DSOF ¶¶ 45-50, 52-58, 60-61, 63, and 65-66, which describe the events as Deputy Johnson approached until after Deputy Dailey shot Arbuckle. The response merely cites to the video and does not describe the basis for the purported dispute. The stated facts are not disputed.

**Response to Plaintiff's Statement of Facts (PSOF)**

Defendant addresses below those of PSOF which are not supported by the record. The remainder of plaintiff's statement of facts are, for summary judgment purposes, either immaterial or not disputed. Defendant reserves the right to dispute those statements of fact in other procedural postures.

PSOF 52 and 70. Objection PSOF ¶¶ 52 and 70 have the false premise that two tires came off the vehicle. This is contrary to the evidence and unsupported by the cited record. The citation for PSOF ¶ 52 is presumably *Dailey dep., 40:13-16* [the page number is missing from the citation]. Nothing in the records supports the thought that a "second" tire came off the vehicle.

> Q  I've stopped it at 8 minutes, 13 seconds. There was something about a TVI. Were you able to hear what they said?
> A  He just notified over the radio that another TVI was conducted.
> Q  All right. And at this point, do you know if she had actually lost a tire off

of her car?

A     Yeah, at one point I saw the rubber part of the tire come off the vehicle.

Q     Do you know which wheel the tire came off of?

A     I'm not entirely sure. I believe it was the front passenger.

Q     All right. But at this point when you conduct the second TVI, you know that she's missing at least one tire. She's on one rim; correct?

A     That's correct.

*ECF 29-2, Dailey depo., 40:8-40:23.*



*DSC_5001.JPG (front right tire missing)*     *DSC_4923.JPG (right rear tire shown)*



*DSC_4991.JPG (both tires on the left present)*

     PSOF 61. Objection. PSOF ¶ 61 asserts the vehicle could not back up in reverse due to Marerro's patrol car. The cited testimony does not support the assertion:

Q     And, in fact, his car was back behind her car, it wasn't parallel to her car, was it?

A     It wasn't directly behind the car. It was facing the same direction offset further to the east.

*Dailey depo., 45:5-45:9.* Further, the car clearly *could* back up in reverse, as it can be seen backing in reverse in the videos. *See DSOF ¶¶ 55-56. ECF 20-6, pp. 3-14 (Dailey Axon Snapshots); Dailey*

AXON, 00:09:24 to 00:09:31; Johnson AXON, 00:01:53 to 00:02:04; Marrero AXON, 00:19:06 to 00:19:18; Slay AXON, 00:01:56 to 00:02:04.

PSOF 63, 67, and 99. Objection. PSOF ¶¶ 63, 67, and 99 incorrectly assert the Volkswagen was "completely surrounded" and "disabled". As set forth in the previous paragraph, the vehicle could, and did back up. It was not "completely surrounded" nor was it "disabled." *See DSOF ¶¶ 55-56.*

PSOF ¶ 81. Objection. PSOF ¶ 81 incorrectly asserts Dailey took up a position of cover behind the trunk of his car. This is not supported by the cited testimony: "Q. And so do you end up behind the trunk of your vehicle? A. Yes, sir." *Dailey depo., 49:18-49:20. See also ECF 20-6, pp. 3-7 (Dailey Axon Snapshots); Dailey AXON, 00:09:24 to 00:09:31* (showing Dailey was well away from the trunk of his car as Arbuckle placed the vehicle in reverse and backed up). Dailey did not say, nor was he asked, if he was in a position of cover. Rather, he was asked if he was "behind the trunk" and he accurately replied that he was. It cannot be inferred, however, that he was in a position of cover because he was clearly several feet away from the car.



*Dailey AXON, 00:09:31 (showing the trunk of his car at a distance);*


*Johnson AXON, 00:01:56 (showing distance between Dailey and his trunk)*

PSOF ¶ 90. Objection. The assertion in PSOF ¶ 90 that each deputy was in a position of cover is unsupported by the cited record. *See Response to PSOF 81, supra.* The question posed pertained to the "plan" to "join the line" which was then explained that the plan was to take positions of cover looking at multiple angles of the vehicle" and then give commands to the driver. *Dailey depo.*, 45:10-45:24. The cited testimony does not relate to questions of cover.

PSOF ¶¶ 91, 109, 128, 129, 130. Objection. The assertion in PSOF ¶ 91, 109, 128, 129, 130 that Deputy Johnson was behind Marrero's patrol vehicle and over 20 feet away from the Volkswagen at the time of the shots is not supported by the cited record and is contrary to the record. Deputy Johnson testified the shots were fired as he was retreating, before he got behind the car. *ECF 29-3, Johnson depo.*, 31:5-31:12; 38:17-38:25. *See also* DSOF ¶¶ 45-66 (Deputy Johnson was not in a position of cover, the vehicle backed directly at him and he thought he was going to be hit).

PSOF ¶¶ 95-97. Objection. PSOF ¶ 95, 96 and 97 assert Arbuckle backed "slowly," at speeds of less than 5 mph, and did not rev the engine before backing. None of these assertions is supported by the record cited and is belied by the record. *See DSOF ¶¶ 52-56 and the record cited*

*therein. ECF 20-1 (Dailey Aff.); ECF 20-3 (Johnson Aff.); ECF 20-4 (Slay Aff.); ECF 20-6 (Dailey Axon Snapshots), pp. 3-7; Dailey AXON, 00:09:24 to 00:09:31; Johnson AXON, 00:01:53 to 00:02:04; Marrero AXON, 00:19:06 to 00:19:18; Slay AXON, 00:01:56 to 00:02:04.*

PSOF ¶ 121. Objection. PSOF ¶ 121 asserts Dailey had no reason to believe Arbuckle was armed. The cited record was a limited inquiry as to whether it had been reported to Dailey that "the driver is armed with a gun or with a knife or some other weapon. *Dailey depo., 47:1-47:4*. Dailey knew Arbuckle was in possession of a vehicle which she was using as a weapon and testified as much:

> Q   At any time, did you see the driver of the vehicle possess a deadly weapon?
> A   ***She was possessing the vehicle which she was using as a weapon***, but as a -- possessing a firearm or a knife?
> Q   Or anything that could be used to harm you.
> A   ***The vehicle, yes.***
> Q   Anything other than the vehicle?
> A   ***Other than the vehicle, no.***

*Dailey depo., 9:20-10:3*.

PSOF 132. Objection. PSOF ¶ 132 asserts Dailey saw Johnson was behind the cover of Marrero's car before shooting. The cited record, which is video only, does not support the assertion. Further, Dailey's first shot was while Johnson was retreating and before Johnson was behind Marerro's car.

## Questions Presented

1. Dailey's use of force when shooting Arbuckle was, as a matter of law, reasonable under the Fourth Amendment. Dailey is entitled to judgment as a matter of law as Dailey did not violate the Fourth Amendment.

2. Even if there were a question of fact regarding the reasonableness of Dailey's use of force, Dailey is entitled to qualified immunity.

**Argument and Authorities**

Plaintiff asserts, under 42 U.S.C. § 1983, that defendant Dailey violated Debra Arbuckle's right under the Fourth Amendment to be free from unreasonable seizure and right and her right under the Fourteenth Amendment to not be deprived of life or liberty without due process of law.

**I.      The claims under the Fourteenth Amendment must be dismissed.**

Plaintiff concedes there is no claim under the Fourteenth Amendment. *ECF 29, at 28*.

**II.     Deputy Dailey is entitled to qualified immunity a matter of law as (1) the shooting was objectively reasonable and Arbuckle's rights were not violated and (2) Deputy Dailey did not violate clearly established law.**

The response ignores the dictates of *Graham v. Connor* and invites the Court to engage in Monday morning quarterbacking and second-guessing the reasonable perceptions, split-second judgments and actions by Deputy Dailey while he faced tense, uncertain, and rapidly evolving circumstances. 490 U.S. 386, 396-97 (1989) (objective reasonableness standard judged by the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight). The response downplays the seriousness of the facts and circumstances that led Deputy Daily to shoot Debra Arbuckle to abate the immediate, deadly threat presented by Arbuckle's ongoing felonious criminal conduct. The *Graham* factors are (1) the severity of the crime, (2) whether the subject posed an immediate threat, and (3) whether the suspect was actively resisting or attempting to evade arrest. *Id.,* at 396.

The response downplays the severity of Arbuckle's conduct, asserting her "crime—a traffic violation—was not severe." *ECF 29, at 8*. To the contrary, the crimes at issue include felony fleeing and eluding, aggravated assault on a law enforcement officer, and felony interference. K.S.A. 8-1506(b), K.S.A. 21-5412 (aggravated assault) K.S.A. 21-5904 (interference). Arbuckle had resisted arrest—fleeing during a lengthy, high speed pursuit—and was attempting to resume her flight and evade arrest.

The response cites to *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995), and *Reavis v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020) for the proposition that the reasonableness of a particular use of force may depend on whether the officer's recklessness unreasonably created the need to use such force—the reckless creation theory. *Seveir*, 60 F.3d at 699. The response focuses extensively on the speeds and distance traveled by Deputy Dailey to get from the west to the east side of Wichita to join the pursuit near the Butler County line. Nothing about the way Dailey drove his vehicle or attempted to bring Arbuckle's flight to an end created the need for him to shoot Arbuckle. That need arose not due to any reckless or unreasonable conduct by Dailey but by Arbuckle's continued criminal conduct which threatened immediate great bodily harm or death to another officer—Deputy Johnson.

The response further argues Arbuckle did not present a threat to anyone's safety. *ECF 1, 29, at 10*. The response distorts the facts evident from the affidavits, depositions, and video claiming:

(1) Arbuckle was backing "slowly" and did not endanger Deputy Johnson. *Id.*, at 11 (Arbuckle "did not accelerate and no one was in her car's path").

(2) Dailey shot Debra before she could comply with commands. *Id*. at 13.

(3) Arbuckle was unarmed in a disabled car. *Id*.

(4) Arbuckle's car was far from officers, who were each in positions of safety. *Id*., at 15.

(5) Arbuckle manifested no intentions of harm. *Id*., at 17.

(6) Arbuckle could not flee in her disabled car, on bare wheel rims, unarmed, and surrounded by officers. *Id*., at 18.

The response invites the court to ignore the perspective of the reasonable officer on the scene faced with split-second actions to abate an immediate and deadly threat.

Plaintiff's recitation of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it" and cannot be adopted when ruling on a motion for summary

judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *accord Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1207 (10th Cir. 2017) ("[W]e cannot ignore clear … video evidence in the record depicting the events as they occurred."). Johnson was directly behind and in the path of the car as Arbukle rapidly and intentionally backed the car towards him.

The response notes the shooting occurred within five seconds of Deputy Marrerro's instruction "Driver. Turn the car off." Arbuckle had a duty to pull to the right and stop during the nearly twenty minutes that she fled from Deputies Adams, Marrero, and Dailey while their with lights and siren were activated. K.S.A. 8-1530. She instead fled and drove recklessly at high speeds. Arbuckle ignored the command to turn her car off. She instead placed the car—which was clearly not disabled—in reverse and accelerated directly at Deputy Johnson, using a 4500 pound vehicle as a weapon. *Dailey depo., 47:1-47:4*. Both Deputy Johnson and Deputy Dailey were immediately threatened by Arbuckle's car.

Plaintiff's reliance on *Zia Trust v. Montoya*, 597 F.3d 1150 (10th Cir. 2010), is misplaced. Plaintiff suggests that an officer shooting at a vehicle at a distance of fifteen feet from a vehicle was unreasonable. *ECF 29, at 15*. The Tenth Circuit there noted "we have never laid down a *per se* rule regarding distance." 597 F.3d at 1155. The critical factor in that case was not the proximity of the officer to the vehicle, but rather the evidence that it "was clearly stuck on a pile of rock" and unable to present a threat to the officer. *Id*.

The reliance on *Fancher v. Barrientos*, 723 F.3d 1191 (10th Cir. 2013) is equally misplaced. There, the proximity of the officer to the suspect was not the significant factor. Rather, the fact the officer continued shooting after he felt the threat had abated was the critical factor. *Id*., at 1197. After the first shot, the suspect was no longer able to control vehicle, escape, or fire a weapon, thus the deputy lacked probable cause to believe that suspect posed threat of serious harm to deputy or others when firing shots two through seven. *Id*., at 1201.

*Reavis v. Frost*, is inapplicable. There, the district court found evidence the suspect presented <u>no threat</u> to the officer when the officer fired. While the suspect had driven within inches of the officer, the office did not fire until <u>after</u> the suspect had passed him and presented no threat to the officer or anyone else. The Tenth Circuit merely held it lacked jurisdiction over an interlocutory appeal over such a fact dispute. 967 F.3d at 988.

Arbuckle clearly manifested an intention of harm. After the pursuit lasting nearly twenty minutes, Arbuckle continued to try to flee despite three TVI attempts by Deputy Dailey. Arbuckle's car was not disabled or "surrounded." After coming to a stop on the south curb, she placed her car in reverse and drove directly at Deputy Johnson.

"It is clearly established that an officer may use deadly force when 'threatened by a weapon (which may include a vehicle attempting to run over an officer).'" *Reavis*, 967 F.3d at 992 (quoting *Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010)). The invitation to second-guess Deputy Dailey is likewise answered by *Thomas v. Durastanti*. Dailey reasonably perceived that Arbuckle presented an immediate threat of great bodily harm or death. He made "a split-second decision concerning the use of deadly force under hardly ideal circumstances. Even if [the deputy] was mistaken, it was a reasonable mistake." 607 F.3d at 666.[1]

"[T]he inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force." *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (citing *Sevier*, 60 F.3d at 699). Dailey's use of force was objectively reasonable and did not violate the Fourth Amendment. *Plumhoff v. Rickard*, 572 U.S. 765, 776-76 (2014), *Brosseau v. Haugen*, 543 U.S. 194 (2004). Even if the question were debatable, Plaintiff cannot meet the burden on qualified immunity to show "every" reasonable officer would have,

---

[1] To be clear, Deputy Dailey was not mistaken. His perception of the deadly threat was both reasonable and accurate. Nonetheless, even had he been mistaken, the mistake is reasonable and the use of force was reasonable under *Graham* and the Fourth Amendment.

under the same or very similar circumstances, understood that deadly force would violate the Fourth Amendment. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

## Conclusion

For the reasons above, and those set forth in his opening brief, Deputy Dailey is entitled to judgment as a matter of law on either prong of the qualified immunity analysis.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 S.W. 5th Street
Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com

**s/David R. Cooper**
David R. Cooper                    #16690
**Attorneys for Defendant**

## Certificate of Service

I hereby certify that I electronically filed the foregoing on July 16, 2021, a with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Michael J. Kuckelman, Michael T. Crabb, and Jennifer Salva; mkuckelman@ktk-law.com; mcrabb@ktk-law.com; jsalva@ktk-law.com. **Attorneys for Plaintiff**

**s/David R. Cooper**